UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ASSURANCE COMPANY OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>CAMPBELL CONCRETE OF NEVADA, INC., et al.,<br><br>    Defendants. | 2:11-CV-00559-PMP-CWH<br><br>ORDER |

Before the Court is Defendant Steven R. Campbell's Motion to Dismiss; or, Alternatively, Motion for More Definite Statement (Doc. #26), filed on June 30, 2011. Plaintiff Assurance Company of America filed a Response (Doc. #32) on July 18, 2011. Defendant Steven R. Campbell filed a Reply (Doc. #34) on July 28, 2011.

Also before the Court is Defendants Campbell Concrete of Nevada, Inc.; Campbell Concrete, Inc.; and Sterling Trenching, Inc.'s Motion to Dismiss; or, Alternatively, Motion for More Definite Statement (Doc. #27), filed on June 30, 2011. Plaintiff Assurance Company of America filed a Response (Doc. #31) on July 18, 2011. Defendants filed a Reply (Doc. #35) on July 28, 2011. The Court held a hearing on these Motions on September 27, 2011. (Mins. of Proceedings (Doc. #42).)

**I. BACKGROUND**

This is an insurance dispute for the recovery of unpaid deductibles and account stated. The plaintiff, Assurance Company of America ("Assurance"), issued four insurance policies to Defendants. The first policy covered the term September 1, 2000 to September

1, 2001 and covered as Named Insureds Campbell Concrete of Nevada, Inc.; Campbell Concrete, Inc.; Sterling Trenching FRC; and Southwest Management, Inc.  (Def. Southwest Management Inc.'s Mot. to Dismiss (Doc. #17) ["MTD"], Ex. A at 1.)  The second policy term covered September 1, 2001 to September 1, 2002, and covered as Named Insureds Campbell Concrete of Nevada, Inc.; SRC Enterprises, Inc.; Sterling Trenching FRC; SRC Sole Proprietorship; Southwest Management, Inc.; and the Campbell Family Trust.  (Pl.'s Resp. to Southwest Management Inc.'s Mot. to Dismiss (Doc. #18) ["Opp'n to MTD"], Ex. 1 at 5, 7.)  The third policy covered the period September 1, 2000 to September 1, 2001 and covered as Named Insureds Campbell Concrete, Inc.; SRC Enterprises, Inc.; Sterling Trenching Inc.; SRC Sole Proprietorship; and Southwest Management, Inc.  (Southwest MTD, Ex. B at 1.)  The fourth policy covered the term September 1, 2001 to September 1, 2002 and covered as Named Insureds Campbell Concrete Inc.; SRC Enterprises Inc.; Sterling Trenching Inc.; SRC Sole Proprietorship, and Southwest Management Inc.  (Opp'n to MTD, Ex. 2 at 4-5.)

Pursuant to the policies, Assurance agreed to insure the named insureds for certain losses incurred as part of the named insureds' contracting businesses.  Each of the four policies contained the following identical language regarding deductibles:

> We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

(Opp'n to MTD, Ex. 1.)  The policy defines "we" and "us" as Assurance, and "you" and "your" as "the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy."  (Id.)  Each of the four policies also contained a "Separation of Insureds" clause:

> Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

      a. As if each Named Insured were the only Named Insured; and
      b. Separately to each insured against whom claim is made or "suit" is brought.

(Id.)

Assurance brought suit in this Court, contending that it paid claims for Defendants, and Defendants owe Assurance for deductible payments Assurance made on Defendants' behalf in settling or paying those claims. Assurance also asserts a claim for account stated. Assurance contends it sent Defendants bills for at least some of the deductibles and Defendants did not contest they were liable for those sums.

Defendant Southwest Management, Inc. previously filed a Motion to Dismiss (Doc. #17), in which it argued that because the policies contained a separation of insureds clause, only the Named Insured against whom the claim was made owed the deductible. Southwest Management, Inc. also argued the account stated claim was too indefinite because it did not identify which Defendant owed how much and based on what circumstances. Assurance opposed the motion, arguing that because the policy stated that "you" were responsible for deductibles, and "you" was defined as any Named Insured, all Named Insureds were liable for the deductible regardless of whether the claim at issue was made against that Named Insured. Assurance also argued that it adequately pled an account stated claim, as it identified the amount for which it billed Defendants and Defendants did not object or disclaim that they owed that amount. On July 1, 2011, the Court summarily denied Defendant Southwest Management, Inc.'s Motion to Dismiss (Doc. #28).

In the meantime, Defendant Steven R. Campbell ("Campbell") filed a Motion to Dismiss (Doc. #26), as did Defendants Campbell Concrete of Nevada, Inc.; Campbell Concrete, Inc.; SRC Enterprises, Inc.; and Sterling Trenching, Inc. (Doc. #27). These two motions raise the same issues regarding policy interpretation and lack of definiteness on the account stated claim as the prior motion. Campbell's motion also challenges his liability as a former president, director, or shareholder of some of the other Defendants under various

provisions of California and Nevada law related to dissolved corporations.

## II. DISCUSSION

In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." Wyler Summit P'ship v. Turner Broad. Sys., Inc., 135 F.3d 658, 661 (9th Cir. 1998). However, the Court does not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in the plaintiff's complaint. See Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994). There is a strong presumption against dismissing an action for failure to state a claim. Ileto v. Glock Inc., 349 F.3d 1191, 1200 (9th Cir. 2003). A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. Bell Atl. Corp. v Twombly, 550 U.S. 544, 556 (2007). Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." Id. at 555.

### A. Separation of Insureds Clause

This Court already denied Defendant Southwest Management, Inc.'s Motion to Dismiss based on the same arguments presented by the moving Defendants. Defendants may ultimately prevail on this issue, but the Court concludes that at this stage, discovery relating to the understanding of the parties regarding the policy at issue is warranted. The Court therefore will deny Defendants' Motions to Dismiss on this basis.

### B. Motion for More Definite Statement

The Court also previously denied Defendant Southwest Management, Inc.'s Motion to Dismiss or for a More Definite Statement on the account stated claim. California and Nevada law generally are in accord on what constitutes an account stated claim. "An account stated may be broadly defined as an agreement based upon prior transactions between the parties with respect to the items composing the account and the balance due, if any, in favor of one of the parties." Old West Enters., Inc. v. Reno Escrow Co., 476 P.2d 1,

2 (Nev. 1970). To establish an account stated claim, a plaintiff must show: "(1) previous transactions between the parties establishing the relationship of debtor and creditor; (2) an agreement between the parties, express or implied, on the amount due from the debtor to the creditor; (3) a promise by the debtor, express or implied, to pay the amount due." Zinn v. Fred R. Bright Co., 76 Cal. Rptr. 663, 665-66 (Cal. App. Ct. 1969) (citations omitted).

However, Nevada appears to be more strict on what a plaintiff must allege in terms of agreement about the amount due. California implies the promise if the creditor sends a statement to the debtor and the debtor fails to object to the statement within a reasonable time. Id.; Levy v. Prinzmetal, 286 P.2d 1023, 1025 (Cal. App. Dep't Super. Ct. 1955) ("Thus if a creditor renders to a debtor a bill or invoice reflecting a charge in a stated amount arising out of transactions previously had between them, and the debtor makes no protest as to the amount shown due, his silence is equivalent to express assent to the correctness thereof, and gives rise to an account stated . . . ."). In contrast, the Nevada Supreme Court indicated in Old West Enterprises that "silence on the part of the one receiving the account" may suffice to raise a rebuttable inference of an implied agreement between the parties, but "the circumstances must be such as to support an inference of agreement as to the correctness of the account." 476 P.2d at 2-3. In Saye v. Paradise Memorial Gardens, Inc., the Nevada Supreme Court affirmed the district court's dismissal of an account stated claim where the plaintiff "purportedly submitted a document entitled 'Statement of Account' . . . demanding reimbursement for goods and services rendered." 554 P.2d 274, 275 (Nev. 1976). The Nevada Supreme Court found "no agreement, express or implied, regarding the obligation, nor the amount thereof, [was] apparent . . . from the record." Id. Consequently, it appears the bare allegation that a plaintiff sent a defendant a statement and the defendant did not respond will not suffice.

Here, Assurance alleges Assurance and Defendants entered into the insurance contracts as set forth above, that Defendants received the benefits of the insurance

5

contracts, that Assurance paid deductibles which Defendants owe, that Assurance invoiced Defendants and demanded payment for amounts due, and Defendants did not dispute, challenge, or object to the invoices. Assurance also alleges specific amounts due on the statement of account under the Nevada policies ($29,128.53) and California policies ($176,581.50). These allegations suffice under California law, as silence in the face of a statement of account raises an inference of agreement that the amount is owed. It is less clear under Nevada law that Assurance's allegations are sufficient without some further "circumstances" to support an inference that Defendants agreed to pay the obligation, including the amount owed. The Saye case suggests that merely sending an invoice to which a defendant does not respond is not sufficient. This Court already has denied Defendant Southwest Management, Inc.'s Motion on the same basis, and it is not clear from Nevada law what more Assurance would have to allege to show an implied promise to pay the amount set forth in the statement of account to which Defendants did not object. The Court therefore similarly will deny Defendants' alternative Motions for a More Definite Statement.

### C. Steven R. Campbell

Defendant Campbell challenges the claims against him on additional grounds not applicable to the entity Defendants. Campbell argues he is not liable as a director or shareholder for any of the Nevada corporate defendants because under Nevada law a trustee of the assets of the dissolved corporation is liable only for debts the corporation owed at the time of dissolution, and Assurance expressly pled that the obligations at issue here did not arise until after dissolution. Campbell argues that he cannot be liable as a shareholder of Campbell Concrete Inc. because that company is a dissolved California corporation, and under California law, any claims against a shareholder must be brought within four years after dissolution of the corporation or the running of the statute of limitations, whichever is earlier. Campbell argues that because Campbell Concrete Inc. was dissolved in January

2004, any complaint against it had to be filed by January 2008, and this suit was not filed until 2011. Campbell also argues he is not liable as a director of Campbell Concrete Inc. because any claim against him as a director had to be brought within three years of dissolution.

The Complaint asserts claims against Campbell in several capacities: (1) as the president, director, and shareholder for Nevada entities Campbell Concrete of Nevada, Inc., SRC Enterprises, Sterling Trenching, Inc., and Southwest Management, Inc.; (2) as the president, director, and shareholder of Campbell California; (3) as the sole proprietor of SRC Sole Proprietorship; and (4) as the trustee for the Campbell Trust. Campbell does not challenge his status in the case with respect to (3) and (4) except with respect to the separation of insureds clause argument discussed previously. Consequently, the Court will deny the motion with respect to those two capacities.

### 1. Nevada Corporations

Under Nevada law as it existed at the time the companies at issue in this case dissolved, upon the dissolution of a Nevada corporation, "the directors become trustees thereof, with full power to settle the affairs, collect the outstanding debts, sell and convey the property, real and personal, and divide the money and other property among the stockholders, after paying or adequately providing for the payment of its liabilities and obligations." Nev. Rev. Stat. § 78.590 (2010).[1] A corporation's dissolution "does not impair any remedy or cause of action available to or against it or its directors, officers or shareholders arising before its dissolution and commenced within 2 years after the date of the dissolution." Id. § 78.585 (2010). Further, the persons who become trustees under § 78.590 are subject to suit "for the debts owing by the corporation at the time of its

---

[1] In 2011, Nevada amended the relevant provisions, including repealing § 78.585. However, the parties have not suggested that the amendments apply retroactively to corporations which dissolved prior to 2011.

7

dissolution, and shall be jointly and severally responsible for such debts, to the amounts of the moneys and property of the corporation which shall come into their hands or possession." Id. § 78.595 (2010). The Nevada Supreme Court interpreted § 78.585 to apply only to pre-dissolution claims, and "the finality of post-dissolution claims [is] determined by the statutes of repose or limitation applicable to the post-dissolution cause of action." Beazer Homes Nev., Inc. v. Eighth Jud. Dist. Ct., 97 P.3d 1132, 1138 (Nev. 2004).

The Complaint alleges that Campbell Concrete of Nevada, Inc.; SRC Enterprises; and Sterling Trenching, Inc. were dissolved on January 1, 2008. There is no allegation that Southwest Management, Inc. has been dissolved, and therefore Campbell's argument has no application to Assurance's claims against him with respect to Southwest Management, Inc.

As to the other Nevada entities, § 78.595 limits liability as a director to "debts owing by the corporation at the time of its dissolution." Assurance expressly pleads that the present obligations did not arise until after dissolution. Consequently, Campbell has no liability as a former director for disbursing the dissolved corporations' assets because the present debts were not known at the time of dissolution.

However, § 78.595 refers only to Campbell's status as a director, not as a shareholder. Under Beazer, the two-year bar for claims against a shareholder of a dissolved corporation in § 78.585 applies only to pre-dissolution claims. Because Assurance alleges its claims arose post-dissolution, the two-year bar does not apply to Campbell in his role as shareholder. It is not clear, however, whether Nevada allows suit against a shareholder for a post-dissolution claim. Beazer makes the following ambiguous statement in a footnote:

> Whether the dissolved corporation can be sued under the name of the corporation after the expiration of the two-year period or an action should be brought against directors or shareholders as trustees will depend on the timing of the suit and whether the corporation is still in the process of winding up its affairs. See NRS 78.590; NRS 78.600; Seavy v. I.X.L. Laundry Co., 60 Nev. 324, 108 P.2d 853 (1941).

97 P.3d at 1138 n.35. Section 78.590 discusses liability of directors as trustees upon

1  dissolution but says nothing about shareholders.  Section 78.600 discusses appointment of
2  trustees or receivers to wind up a corporation but likewise says nothing about shareholders.
3  Seavy involved a situation where the individual stockholders were personally liable because
4  although they dissolved the corporation, they continued to operate the business, and did not
5  simply wind up the business's affairs.  108 P.2d at 856.  Seavy does not hold or suggest that
6  where a corporation observes all corporate formalities, properly winds up its affairs, and
7  distributes any remaining assets to shareholders, a shareholder becomes a trustee to
8  creditors with unknown post-dissolution claims.

9       Nevada's statutory provisions provide that shareholders are not liable for the
10 corporation's debt unless specifically provided for by statute or in the articles of
11 incorporation.  See Nev. Rev. Stat. § 78.225 ("Unless otherwise provided in the articles of
12 incorporation, no stockholder of any corporation formed under the laws of this State is
13 individually liable for the debts or liabilities of the corporation."), § 78.747 ("Except as
14 otherwise provided by specific statute, no stockholder, director or officer of a corporation is
15 individually liable for a debt or liability of the corporation, unless the stockholder, director
16 or officer acts as the alter ego of the corporation.").  No statutory section provides for suit
17 against a shareholder for post-dissolution claims for corporate funds distributed to the
18 shareholder.

19       Assurance does not identify any law supporting such a claim except for Beazer
20 and the trust fund theory, which Beazer acknowledged some courts have adopted but did
21 not specifically adopt itself.  Beazer's holding loses some significance if a person can sue a
22 corporation for claims discovered post-dissolution but cannot recover any disbursed assets
23 from shareholders.  But California has interpreted its own law in exactly this fashion:

> We perceive nothing unreasonable or improbable in a construction that permits enforcement of postdissolution claims against dissolved corporations but not against their shareholders. . . .
>    At some point, shareholders should be permitted to recover their investments in a defunct corporation and put the funds to other uses

9

> free of claims by the dissolved corporation's creditors. . . . Because the distribution of assets occurs before dissolution, not after, and because no provision need be made for postdissolution claims, recognizing a plaintiff's right to sue a dissolved corporation on a postdissolution claim will not delay or complicate either the distribution of assets or the filing of the certificate of dissolution.
>
> Once the corporation's assets have been properly distributed to the shareholders, the assets are beyond the reach of plaintiffs who possess claims that arose after dissolution. This means that bringing suit against a dissolved corporation on a postdissolution claim will often be a pointless exercise, because the corporation will have no assets with which to satisfy a judgment against it.

Penasquitos, Inc. v. Superior Ct., 53 Cal. 3d 1180, 1190-91 (Cal. 1991) (internal citations omitted). The California Supreme Court noted that a plaintiff likely will not bring a claim against a dissolved corporation where there is no prospect of recovery, but such a suit may be worth pursuing if the plaintiff can recover from "the dissolved corporation's liability insurance, from undistributed assets, or from assets of the corporation discovered after dissolution." Id. at 1191; see also Canarelli v. Eighth Jud. Dist. Ct., --- P.3d ----, 2011 WL 5508990, *5 (Nev. 2011) (recognizing the "practical problems created for plaintiffs who bring post-dissolution claims against corporations who have successfully wound up their affairs," but noting "[o]nly the Legislature can reconsider the Model Business Corporation Act of 1984, which extends the statute of limitations against corporations for post-dissolution claims in a manner that addresses not only the right to pursue claims but also the party who must be responsible for defending the corporation in post-windup litigation."). Although Nevada has not given clear guidance on the point, the Court concludes Campbell is not liable as a shareholder for any post-dissolution claims that were unknown at the time the Nevada corporations were dissolved, as there is no statutory basis for such a claim and Assurance has not identified any case law showing Nevada has adopted the trust fund theory in the face of statutory provisions limiting shareholder liability.

///

### 2. California - Campbell Concrete, Inc.

Under California law, the board of a dissolving corporation may distribute to shareholders any remaining assets after it has determined that "all the known debts and liabilities of a corporation in the process of winding up have been paid or adequately provided for." Cal. Corp. Code § 2004. California provides that a plaintiff may assert claims against a shareholder of a dissolved corporation, "whether arising before or after the dissolution of the corporation," "to the extent of their pro rata share of the claim or to the extent of the corporate assets distributed to them upon dissolution of the corporation, whichever is less." Cal. Corp. Code § 2011(a)(1)(B). A plaintiff must bring suit against the shareholder either prior to the applicable statute of limitations expiring or within four years "after the effective date of the dissolution of the corporation," whichever is earlier. Cal. Corp. Code § 2011(a)(2). The effective date is the date the corporation files the certificate of dissolution with the Secretary of State. Cal. Corp. Code § 1905.1. A director, on the other hand, is liable for distributing assets of a dissolved corporation to shareholders only if he does so "without paying or adequately providing for all known liabilities of the corporation." Cal. Corp. Code § 316(a)(2); see also id. § 316(c) (providing that a plaintiff may bring suit against the directors if the plaintiff's "debts or claims arose prior to the time" the director distributed the assets to the shareholders).

Assurance alleges Campbell Concrete, Inc. was a California corporation that was dissolved on May 6, 2004. The Court will dismiss the claims against Campbell based on his capacity as shareholder or director of Campbell Concrete, Inc. Assurance expressly pleads that its causes of action arose after dissolution. Campbell as director therefore is not liable because these obligations were not "known" at the time the dissolved corporation's assets were distributed under section 316(a)(2). He also is not liable as a shareholder because section 2011(a)(2) requires that any such claim be brought within four years after dissolution or prior to the expiration of the statute of limitations, whichever is earlier. Here,

four years after dissolution would be May 2008.  This case was not filed until 2011. Assurance's claims against Campbell as shareholder therefore are untimely.

### III. CONCLUSION

IT IS THEREFORE ORDERED that Defendant Steven R. Campbell's Motion to Dismiss; or, Alternatively, Motion for More Definite Statement (Doc. #26) is hereby GRANTED in part and DENIED in part.  The motion is granted in that Plaintiff Assurance Company of America's claims against Defendant Steven R. Campbell are hereby dismissed to the extent they are based on Steven R. Campbell's role as an officer, director, or shareholder of Campbell Concrete of Nevada, Inc.; SRC Enterprises; Sterling Trenching, Inc.; or Campbell Concrete, Inc.  The Motion is denied in all other respects.

IT IS FURTHER ORDERED that Defendants Campbell Concrete of Nevada, Inc.; Campbell Concrete, Inc.; and Sterling Trenching, Inc.'s Motion to Dismiss; or, Alternatively, Motion for More Definite Statement (Doc. #27) is hereby DENIED.

DATED:  December 19, 2011

_____
PHILIP M. PRO
United States District Judge